### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

EVA SEAL,

      Plaintiff,

v.                                            CASE NO. 3:09-cv-670-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

### ORDER AND OPINION

This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her claim for disability benefits.  Plaintiff filed a memorandum in support of the complaint (Doc. #10).  Defendant filed a memorandum in support of the Commissioner's decision to deny disability benefits (Doc. #13).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).

The undersigned has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.  Upon review of the record, the undersigned found the issues raised by Plaintiff were fully briefed and determined oral argument would not benefit the undersigned in making his determinations.

Accordingly, the instant matter has been decided on the written record.  For the reasons set forth herein, the decision of the Commissioner is **REVERSED and**

**REMANDED**.

## I. Procedural History

On June 22, 2006, Plaintiff Eva Seal ("Plaintiff") filed an application for Supplemental Security Income ("SSI"), alleging disability as of March 19, 2005 (Tr. 90-92).   Plaintiff requested a hearing before Administrative Law Judge Stephen Calvarese  (the "ALJ") and a hearing was held on October 28, 2008 (Tr. 19-53).   On January 16, 2009, the ALJ issued an unfavorable decision (Tr. 6-18).   Subsequently, the Appeals Council denied Plaintiff's request for review (Tr. 1-4).   Plaintiff now appeals.

## II. Standard of Review

A plaintiff is entitled to disability benefits under the Social Security Act if he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months.   42 U.S.C. § 1382c(a)(3)(A).

The Commissioner has established a five-step sequential evaluation process for determining whether a plaintiff is disabled and therefore entitled to benefits.   *See* 20 C.F.R. § 416.920(a)(4)(i-v);[1] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).   Plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner.   *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).   The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence.   *See also Richardson v. Perales*, 402 U.S.

---

[1]Unless otherwise specified, all references to 20 C.F.R. will be to the 2010 edition.

389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence.   42 U.S.C. § 405(g).   Substantial evidence is defined as more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so.   While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.   *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled.   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

As in all Social Security disability cases, Plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove disabling physical or mental functional limitations.  20 C.F.R. § 416.912(c).

### III. Background Facts

Plaintiff was born on May 21, 1968 (Tr. 25).  Thus, at the time of Plaintiff's hearing, Plaintiff was forty (40) years old (Tr. 25).  Plaintiff completed the Eleventh grade in high school and received a General Education Development ("GED") certificate (Tr. 26).  Plaintiff has no past relevant work experience (Tr. 17).[2]  After reviewing the record evidence and obtaining testimony at the October 28, 2008 hearing, the ALJ found Plaintiff has the "severe" impairments of fibromyalgia,[3] polyarthritis,[4] and a history of left lung wedge

---

[2]Past relevant work is defined as work that was done within the past 15 years, that was substantial gainful activity, and that was performed long enough to learn how to do it.  20 C.F.R. § 416.960(b)(1)

[3]Fibromyalgia is a chronic condition that causes widespread pain in muscles, ligaments, and tendons.  It is also characterized by fatigue and multiple tender areas on the body. http://www.mayoclinic.com/health/fibromyalgia/DS00079 (last visited September 9, 2010).

[4]Polyarthritis occurs when a person has simultaneous inflamation of several joints.  STEDMAN'S MEDICAL DICTIONARY 1391 (25th ed.1990).

resection (Tr. 11).[5]

## A. Medical Evidence

Plaintiff alleges disability, beginning on March 19, 2005, due to fibromyalgia, arthritis, migraine headaches, and depression (Tr. 107).   Medical records indicate that Plaintiff began seeking treatment for the aforementioned conditions from the Nassau County Health Department ("NCHD") in August 2001 (Tr. 257).   On August 23, 2001, Plaintiff was prescribed Zoloft[6] and Xanax[7] for depression and was referred to Sutton Place Behavioral Health, Inc. ("Sutton Place") for psychological counseling (Tr. 257-323).

Plaintiff first presented to Sutton Place in December 2002 for a psychological evaluation (Tr. 220-27).   During said evaluation, Plaintiff reported being unemployed and stated that she had neither employment, nor vocational goals (Tr. 222).   Plaintiff stated that she has never worked for longer than 3 to 4 months at a time due to "poor attitude" (Tr. 222).   Plaintiff exhibited poor concentration, social withdrawal, loss of interest in activities, impaired memory, insomnia, anxiety, depressed mood, and poor attention (Tr. 225-26). Plaintiff was diagnosed with Major Depressive Disorder and panic attacks without

---

[5]A lung wedge resection is a surgical procedure to remove a portion of the lung or the whole lung. The surgery is usually performed on a person with a diseased or damaged lung. http://www.medicineonline.com/topics/W/2/Wedge-Resection/Lung-Resection.html (last visited September 9, 2010).

[6]Zoloft is an antidepressant which affects chemicals in a person's brain that may become unbalanced and cause depression, panic, anxiety, and obsessive compulsive conditions. http://www.drugs.com/zoloft.html (last visited September 9, 2010).

[7]Xanax is in a group of drugs called benzodiazepines, which affect chemicals in the brain that may become unbalanced.  Xanax is generally used to treat anxiety disorders, panic disorders, and anxiety caused by depression.  http://www.drugs.com/xanax.html (last visited September 9, 2010).

5

Agoraphobia (Tr. 226).[8]

Over the next several years, Plaintiff regularly sought treatment at Sutton Place (Tr. 220-56).   During said treatment period, Plaintiff received counseling and medication (Tr. 220-56).   In April 2006, Plaintiff's treating mental health physician at Sutton Place noted that Plaintiff's symptoms were in "fairly good control" and assessed Plaintiff a GAF score of 65 (Tr. 248).[9]   In October 2006, Plaintiff's file at Sutton Place was closed due to several "no shows" for therapy (Tr. 228).

In conjunction with her treatment at Sutton Place, Plaintiff regularly sought primary care at NCHD (Tr. 187-90, 207-19, and 257-39).   Since 2004, Plaintiff's primary care physician at NCHD has been Thomas C. Washburn, M.D. ("Dr. Washburn") (see Tr. 28, 207-15, 311, 323-29, 332-35, 519-24).

On July 26, 2006, Dr. Washburn completed a Fibromyalgia Residual Functional Capacity ("RFC") Questionnaire regarding Plaintiff (Tr. 165-70).   In said questionnaire, Dr. Washburn indicated that Plaintiff met the American College of Rheumatology criteria for fibromyalgia (Tr. 165).   Dr. Washburn listed Plaintiff's other diagnoses as rheumatoid arthritis, chronic headaches, and secondary depression (Tr. 165).   Dr. Washburn indicated that Plaintiff  has the following symptoms: multiple tender points; chronic fatigue; morning

---

[8]Agoraphobia is an irrational fear of leaving the familiar setting of the home.  The fear is so pervasive that many external life situations are reluctantly entered into or avoided altogether.  STEDMAN'S MEDICAL DICTIONARY 1391 (25th ed.1990).

[9]The Global Assessment of Functioning scale ("GAF") was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, [and] has some meaningful interpersonal relationships."  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

stiffness; muscle weakness; irritable bowl syndrome; frequent/severe headaches; numbness and tingling; breathlessness; anxiety; panic attacks; depression; temoromandibular joint dysfunction ("TMJ"); and chronic fatigue syndrome (Tr. 165).

Dr. Washburn additionally noted that Plaintiff experiences pain levels that range from 6 to 8 on a scale of 1 to 10, with 10 being the highest threshold of pain (Tr. 166). Dr. Washburn stated that Plaintiff is incapable of working at even low-stress jobs (Tr. 167). Specifically, Dr. Washburn indicated that Plaintiff can only walk one city block "at best" because she only has one lung (Tr. 167). He further noted that Plaintiff can only sit for 10 minutes at a time, stand for 5 minutes at a time, and can only sit, stand, or walk for 2 hours in an 8-hour workday (Tr. 167).

In a "To Whom it May Concern" letter, dated July 26, 2006, Dr. Washburn stated that "between [Plaintiff's] limited respiratory function and the fibromyalgia, it is [his] medical opinion that [Plaintiff] is permanently and totally disabled." (Tr. 172).

On October 19, 2006, Hung V. Tran, M.D. ("Dr. Tran"), a medical disability examiner with the Office of Disability Determination, conducted a physical examination of Plaintiff (Tr. 191-94). During said examination, Dr. Tran noted that Plaintiff had no loss of motion in her neck, spine, arms, or legs (Tr. 193). Dr. Tran indicated that Plaintiff's spine was "normal in shape" (Tr. 193). Dr. Tran also noted that Plaintiff's gait was normal (Tr. 193).

During the aforementioned physical examination, Plaintiff reported experiencing pain in her legs, arms, and lumbar spine (Tr. 193). Plaintiff also reported pain in her back and knees upon squatting downward 10 inches (Tr. 193). Plaintiff blamed her arthritis for weak grip in both of her hands and was unable to lift 20 pounds with both hands as the weight

7

was "heavy" (Tr. 193).   Plaintiff did not report any numbness in her upper or lower extremities during the examination (Tr. 193).

Dr. Tran diagnosed Plaintiff with a headache, pain in the whole body, and recognized that some of her reported symptoms resulted from the operation by which Plaintiff's left lung was removed (Tr. 194).   Dr. Tran noted that, although Plaintiff had weakness in her grip during the exam, Plaintiff had no trouble gathering her belongings after the examination (Tr. 194).   Consequently, Dr. Tran attributed Plaintiff's weak grip to "poor effort" (Tr. 194).

On October 26, 2006, a non-examining, Single Decision Maker, Anna Trushkov ("SDM Trushkov"), completed a RFC Questionnaire regarding Plaintiff's physical capabilities (Tr. 199-206).   SDM Trushkov indicated in said questionnaire that Plaintiff can occasionally lift 20 pounds and frequently lift 10 pounds (Tr. 200).   SDM Trushkov noted that Plaintiff can stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has the ability to push or pull, except as limited by her ability to lift and carry weight (Tr. 200).   Additionally, SDM Trushkov indicated that no treating or examining physician statement(s) regarding Plaintiff's physical capabilities were included in Plaintiff's file (Tr. 205).

During a physical examination conducted in December 2007, Louis Registre, M.D. ("Dr. Registre") noted that Plaintiff's pain was controlled (Tr. 487-90).   The exam revealed Plaintiff's range of motion was without pain, her spine was not tender, and her gait and station were normal (Tr. 488).   Dr. Registre also noted that Plaintiff had no motor deficits (Tr. 488).

8

On May 21, 2007, non-examining consultative physician, John E. Long, M.D. ("Dr. Long") completed a RFC Questionnaire wherein he noted that it was his opinion Plaintiff has the ability to perform light exertional work, as defined by the Regulations (Tr. 407-14). Dr. Long indicated that no treating source statement(s) regarding Plaintiff's limitation(s) were available for his review (Tr. 413).

Upon referral by Dr. Washburn, Plaintiff presented on two different occasions to Archana Goel, M.D. ("Dr. Goel"), a rheumatologist (Tr. 494-98).  In July 2008, Dr. Goel conducted a physical exam of Plaintiff (Tr. 496-98).  In conjunction therewith, Dr. Goel noted that Plaintiff had tenderness in her hands, wrists, and elbows, but that she had full range of motion and no synovitis in said areas (Tr. 497).[10]  Dr. Goel additionally reported, however, that Plaintiff had a reduced range of motion in her shoulders and hips, and that she experienced diffuse tenderness in her chest wall, neck, upper back, and lower back (Tr. 497).

On July 14, 2008, an x-ray of Plaintiff's lumbar spine was obtained (Tr. 448).  The x-ray revealed that Plaintiff's vertebral body alignment, heights, and disk were all well maintained; however, mild levoscoliosis was noted (Tr. 448).  On July 14, 2008, an x-ray was obtained with respect to Plaintiff's left hand, the results of which revealed erosion at the base of Plaintiff's fifth metacarpal (Tr. 449).  After review of both the aforementioned x-ray results, Dr. Goel diagnosed Plaintiff with fibromyalgia, and probable osteoarthritis, mainly in the thumbs  (Tr. 498).  In addition, Dr. Goel recommended that Plaintiff walk 30 minutes per day and referred her to occupational therapy for hand braces/splints (Tr. 498).

---

[10]Synovitis is inflamation of a synovial membrane, especially that of a joint.  STEDMAN'S MEDICAL DICTIONARY 1391 (25th ed.1990).

In August 2008, Plaintiff presented to Dr. Goel for a follow-up visit (Tr. 494-95). After examining Plaintiff, Dr. Goel again referred Plaintiff for hand braces/splints (Tr. 495). Dr. Goel discussed physical activity with Plaintiff and again recommended that she walk 30 minutes per day (Tr. 495).

On August 27, 2008, Dr. Washburn completed a Physician's Statement of Certification in relation to a disabled person parking permit stating that Plaintiff has a severe limitation in her ability to walk due to an arthritic, neurological, or orthopedic condition (Tr. 492). Specifically, he noted that Plaintiff is unable to walk further than 70 feet due to limited breathing and leg pains (Tr. 492).

**B. Plaintiff's Testimony**

At the October 28, 2008 hearing, Plaintiff testified that Dr. Washburn has been her treating physician since 2004 (Tr. 28). Plaintiff stated that Dr. Washburn treats her for emphysema, chronic obstructive pulmonary disease ("COPD"), rheumatoid arthritis, fibromyalgia, severe headaches, and depression (Tr. 28).

When the ALJ asked Plaintiff about her emphysema and COPD, Plaintiff indicated that she quit smoking in 2002 because of a lung disorder (Tr. 29). Plaintiff elaborated by noting that most of her left lung was surgically removed after it collapsed in 2002 (Tr. 29, 42). Plaintiff explained that her lung condition affects her breathing (Tr. 29). She noted that her breathing impairment prevents her from walking more than 35 to 40 feet without losing her breath, and that she can only speak on a telephone for 5 minutes without experiencing shortness of breath (Tr. 30). Plaintiff did state, however, that unless she is nervous or speaks a lot she is able to sit in a chair without experiencing breathing problems (Tr. 29).

In regard to her arthritis and fibromyalgia, Plaintiff reported that she experiences pain and swelling "everywhere" (Tr. 30).  She noted that there "is never one part [of her body] that hurts more than others" (Tr. 30).  Specifically, Plaintiff indicated that she experiences pain and swelling that affects her hands, feet, shoulders, neck, back, and hips (Tr. 29-30). Plaintiff indicated that her medications help "some" (Tr. 30).  Plaintiff noted that even with medication she experiences a pain level "around a seven" on a scale of 1 to 10 (Tr. 31). Further, Plaintiff testified that she had recently been prescribed a cane to assist her with walking and balance (Tr. 31-33).

Plaintiff stated that she has been prescribed Lyrica[11] and Flexeril for her fibromyalgia (Tr. 35).  She also testified that she takes Lortab[12] for pain and Xanax for depression (Tr. 35).  Plaintiff further indicated that she uses Advair[13] and Albuterol[14] inhalers (Tr. 35).  In conjunction with the aforementioned prescriptions, Plaintiff noted that she uses a TENS unit[15] 2 to 3 times per day for 30 to 40 minutes (Tr. 35).  She indicated that the TENS unit

---

[11]Lyrica is an anti-epileptic drug that works by slowing down impulses in the brain that cause seizures.  It is also used to control chemicals in the brain that send pain signals across the nervous system.  Lyrica is commonly prescribed to control seizures and to treat fibromyalgia. http://www.drugs.com/lyrica.html (last visited September 9, 2010).

[12]Lortab is a combination of two drugs called Hydrocodone and Acetaminophen.  Hydrocodone is a narcotic pain reliever and Acetaminophen is a less potent pain reliever that can increase the effects of Hydrocodone.  Lortab is generally used to relieve moderate to severe pain. http://www.drugs.com/lortab.html (last visited September 9, 2010).

[13]Advair is a drug that prevents the release of inflammatory substances into the body and relaxes muscles in the airways to improve breathing.  Advair is prescribed to prevent asthma attacks and it is used to prevent flare-ups or worsening of COPD.  http://www.advair.com/html (last visited September 9, 2010).

[14]Albuteral is a broncodilator that works by relaxing muscles in a person's airways to improve breathing.  http://www.drugs.com/albuteral.html (last visited September 9, 2010).

[15]A TENS unit, or Transcutaneous Electrical Nerve Stimulation unit, is used to relieve nerve related pain conditions.  It works by sending stimulating pulses across the surface of the skin and along nerve strands to prevent pain signals from reaching the brain.  http://www.tensunits.com (last visited September 9, 2010).

was prescribed to help relieve her back pain and pain resulting from nerve damage caused by her lung surgery (Tr. 35-36).  Plaintiff testified that her prescriptions make her drowsy, dizzy, and, at times, cause her to fall asleep (Tr. 36).

As a result of her fibromyalgia, Plaintiff testified that it is difficult for her to handle objects (Tr. 36).  Plaintiff indicated that she requires the use of hand/wrist braces (Tr. 37).  While wearing her hand/wrist braces, Plaintiff stated that she is unable to tie shoes, zip a jacket, and that she must use both her hands to hold a cup (Tr. 38).  Additionally, Plaintiff indicated that she cannot lift a gallon of milk, but can pick up a loaf of bread (Tr. 39).  She testified that she experiences pain in her back and hips after sitting for 10 to 15 minutes (Tr. 40).  She further noted that she can only stand for 10 minutes at a time (Tr. 41).

In regard to her daily activities, Plaintiff stated that she is able to put clothes into the washing machine, but she cannot transfer wet clothes into the dryer (Tr. 41).  Plaintiff testified that she cannot fold clothes, rarely cooks, cannot vacuum, and has not been able perform yard work since 2002 (Tr. 41-42).  Plaintiff indicated that she experiences difficulty gripping the steering wheel when driving (Tr. 42).  Further, Plaintiff noted that if she is in a car for a long period of time her back and hips begin to hurt (Tr. 43).  Plaintiff stated that for the past couple of years she has been using a scooter while shopping (Tr. 43).  Plaintiff also indicated that in April 2008 she obtained a disabled person parking permit through Dr. Washburn (Tr. 43-44).

Plaintiff noted that she is tired all the time and that she must spend "a couple hours a day lying down" (Tr. 37).  She stated that she watches television daily for 2 to 3 hours and that she has trouble sleeping at night (Tr. 44-45).  When the ALJ asked whether she made

up for her loss of sleep at night during the day, Plaintiff responded that she tries not to fall asleep during the day, but if she does, "it's only just a short, like 30-minute nap" (Tr. 45).

## C. The ALJ's Decision

In his opinion, dated January 16, 2009, the ALJ found Plaintiff suffered from fibromyalgia, polyarthritis, and a history of left lung wedge resection  (Tr. 11).  The ALJ found the aforementioned impairments to be "severe" within the meanings of the Regulations (Tr. 12).  The ALJ went on to find, however, that said impairments, either alone or in combination, did not meet or equal an impairment listed in 20 C.F.R. 404 Appx. 1 Sub. P (the "Listings") (Tr. 12).

Upon review of the evidence of record, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light exertional work (Tr. 16).  Specifically, the ALJ determined Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently (Tr. 13).  Additionally, the ALJ found Plaintiff could sit, stand, or walk 6 hours each in an 8-hour workday (Tr. 13).[16]

After determining Plaintiff's RFC and obtaining testimony from a vocational expert (the "VE"), the ALJ found that, despite Plaintiff's work restrictions, Plaintiff could perform the demands of jobs that exist in substantial numbers in the national and local economy (Tr. 17).  Relying on the testimony of the VE, the ALJ found that, based on Plaintiff's age, education, past relevant work experience, and RFC, Plaintiff could perform the occupations of mail clerk; cashier II; office helper; and surveillance systems monitor (Tr. 17).  *See*

---

[16]These restrictions comport with "light work" as defined by the Regulations.  Specifically, light work requires the ability to lift and carry 20 pounds occasionally and up to 10 pounds frequently, sitting up to 6 hours of an eight-hour workday, and standing/walking 6 or more hours in an eight-hour workday.  20 C.F.R.§ 416.967(b); *see also* SSR 83-10, 1983 WL 31251, at *5 (S.S.A. Nov. 30, 1982).

United States Dep't of Labor, *Dictionary of Occupational Titles* §§ 209.687-026, 211.462-010, 239.567-010, 379.367-101 (4th Ed. 1991). Based in part on the VE's testimony and after finding Plaintiff's allegation that she is unable to perform all work activity was unsupported by the record evidence as a whole, the ALJ found Plaintiff was not under a disability as defined by the Social Security Act ("the Act") (Tr. 18).

## IV. Analysis

Without addressing all of Plaintiff's arguments, the undersigned finds the Commissioner's decision should be reversed and remanded for further proceedings. More particularly, the undersigned finds Plaintiff's argument that the ALJ improperly discounted the opinion evidence offered by Dr. Washburn, Plaintiff's treating physician, to be persuasive (*see* Doc. #10 at 1).

To illustrate, the Regulations provide that, generally, more weight should be given to the opinion of a source who has examined a claimant than to the opinion of a non-examining source. 20 C.F.R. § 416.927(d). The Regulations further instruct ALJs with respect to properly weighing the medical opinions of treating physicians. The Regulations provide, in pertinent part, as follows:

> Generally, we give more weight to opinions from [a plaintiff's] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 416.927(d)(2).

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s)," a treating

14

physician's medical opinion is due to be afforded great weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.  20 C.F.R. § 416.927(d)(2).  Important to the determination of whether there is a "detailed, longitudinal picture" of a claimant's impairments is the length of the treatment relationship,[17] the frequency of examination, the knowledge of the treating source as shown by the nature and extent of the treatment relationship, the evidence and explanation presented by the treating source to support his or her opinion, the consistency of the opinion with the record as a whole, and the specialization of the physician.  20 C.F.R. § 416.927(d)(2)–(5).

In addition, it is well established in the Eleventh Circuit that, generally, substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is "good cause" to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991).  The Eleventh Circuit has concluded "good cause" exists when a treating physician's opinion is: (1) not bolstered by the evidence; (2) contrary to the evidence; or (3) inconsistent with the treating physician's own medical records.  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error."  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Where the ALJ articulated specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported

---

[17]Generally, the longer a treating source has treated a claimant and the more times a claimant has been seen by a treating source, the more weight that should be given to that source's medical opinion.  20 C.F.R. § 416.927(d)(2)(i).

by substantial evidence," a reviewing court cannot "disturb the ALJ's refusal to give the opinion controlling weight." *Carson v. Comm'r of Soc. Sec.*, 2008 WL 4962696 at *1 (11th Cir. Nov. 21, 2008).[18]

When assessing a fibromyalgia case, however, the ALJ's decision to deny disability benefits cannot turn on a finding that there was a lack of corroborative objective evidence to support a treating physician's diagnosis of impairment or his or her opinion as to the severity of the impairment. *Moore v. Barnhart*, 405 F.3d 1208, 1211-12 (11th Cir. 2005). This is because fibromyalgia is a disorder that often lacks medical or laboratory signs and is mostly diagnosed on an individual's described symptoms. *Id.* at 1211-12*; see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (stating that "fibromyalgia patients present no objectively alarming signs"); *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2nd Cir. 2003) (explaining that "there are no objective tests which can conclusively confirm [fibromyalgia]" (*quotation marks and citation omitted*)); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (noting that "[t]here are no laboratory tests for the presence **or severity** of fibromyalgia") (*emphasis added*).  The lack of objective clinical findings, in the case of fibromyalgia, is alone insufficient to support an ALJ's rejection of a treating physician's opinion as to the claimant's functional limitations. *See Green-Younger*, 335 F.3d at 105-08 (holding that because fibromyalgia is "a disease that eludes [objective] measurement," ALJ improperly discredited treating physician's disability determination based upon lack of objective evidence).

---

[18]Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.  11th Cir. R. 36-2.

In the instant case, Plaintiff argues, *inter alia*, that the ALJ improperly relied upon a lack of objective findings in the record to discount Dr. Washburn's opinions regarding Plaintiff's fibromyalgia limitations (Doc. #10 at 14-17).  The ALJ stated "[Dr. Washburn's] own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect [to see] if the [Plaintiff] were in fact disabled" (Tr. 16).  In addition, the ALJ stated that "Dr. Washburn apparently relied quite heavily on the subjective report of symptoms and limitations provided by [Plaintiff], and seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported" (Tr. 16).

The record, however, reveals that Plaintiff consistently reported symptoms of fibromyalgia, including, *inter alia*, chronic muscle pain, severe fatigue, pain upon palpation of tender points, insomnia, jaw pain/tenderness, numbness in the legs and feet, and depression, both before and after diagnosis, and that Plaintiff's physicians at the Nassau County Health Department consistently noted and credited these complaints (*see* Tr. 319-27, 329, 332-35, 519-24).  In his decision, the ALJ stated that Dr. Washburn apparently relied quite heavily on the subjective report of symptoms and limitations provided by Plaintiff and seemed to accept what she reported as true (Tr. 16).  This assertion, however, is not supported by the record evidence.

Specifically, Dr. Washburn noted, in addition to Plaintiff's subjective reports, his objective findings regarding Plaintiff's symptoms.  For instance, on June 15, 2005, Dr. Washburn noted that his objective findings revealed Plaintiff's finger joints were swollen

and "very tender" (Tr. 326).[19]   On July 18, 2005, Dr. Washburn noted that his objective findings revealed that Plaintiff had reduced range of motion ("ROM") in her neck and right shoulder and that she also had "trigger [or tender] points" in her shoulders, neck, upper chest, and right elbow (Tr. 327).   On August 22, 2010, Dr. Washburn noted his objective findings revealed Plaintiff: (1) could only lift 8 pounds; (2) could not reach overhead; (3) had reduced grip strength; (4) could only walk 100 feet; (4) could only stand for 10 minutes at a time; and (5) could only sit for 20 minutes at a time (Tr. 329).   In 2006, Dr. Washburn noted his objective findings revealed Plaintiff was, *inter alia*, tender to palpitation and experienced pain upon opening her jaw (Tr. 209).   On April 2, 2008, Dr. Washburn noted that his objective findings revealed Plaintiff's fingers were tender, her grip strength was reduced, and that she had reduced ROM in her shoulders with pain (Tr. 524).

These notations belie the ALJ's assertion that Dr. Washburn's treatment notes indicate that he seemed to "uncritically accept as true most, if not all, of what [Plaintiff] reported" (*see* Tr. 16).

The ALJ additionally stated that "[t]here is **no** evidence that [Plaintiff's] impairments impose limitations beyond those assessed in the residual functional capacity [as determined by the ALJ]" (Tr. 16) (*emphasis added*).   This statement is patently untrue.   To illustrate, Dr. Washburn's opinion evidence is evidence that suggests Plaintiff suffers from limitations beyond those assessed by the ALJ.   Chapter 20 Code of Federal Regulations, Section 416.920(3), provides that the Social Security Administration ("SSA"), "will consider

---

[19]It should be noted that it appears Dr. Washburn indicates his patients' subjective reports by marking a "S" adjacent to such reports, and marks an "O" adjacent to his objective findings (*see e.g.*, Tr. 209, 326-29, 524).

18

**all** evidence in your [the claimant's] case record when we [the SSA] make a determination or decision whether you are disabled" *(emphasis added)*.  Consequently, an ALJ cannot pick and choose from the evidence in order to support his or her conclusions.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ("[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability").  In addition, the Ninth Circuit has found remand warranted where the ALJ's "paraphrasing of record material is not entirely accurate regarding the content or tone of the record." *Reddick v. Chater*, 157 F.3d 715, 723 (9th Cir. 1998).

Further, Plaintiff's testimony evidences limitations beyond those assessed by the ALJ.  For instance, Plaintiff testified that, as a result of her fibromyalgia, it is difficult for her to handle objects (Tr. 36).  Plaintiff indicated that she requires the use of hand/wrist braces, and that while wearing her hand/wrist braces, she is unable to tie shoes, zip a jacket, and that she must use both her hands to hold a cup (Tr. 37-38).  Indeed, Plaintiff has been prescribed hand splints/braces and the RFC does not account for any limitation(s) stemming therefrom.  Additionally, Plaintiff testified that she cannot lift a gallon of milk (Tr. 39); however, Plaintiff's RFC provides for the ability to lift  20 pounds occasionally (Tr. 13). It should also be noted that Dr. Tran reported that Plaintiff was unable to lift 20 pounds with both hands (Tr. 193).  Plaintiff also testified that she experiences pain in her back and hips after sitting for 10 to 15 minutes, and further stated that she can only stand for 10 minutes at a time (Tr. 40-41).  As noted above, there is evidence that Plaintiff's impairments impose limitations beyond those assessed by the ALJ and his statement to the contrary, *supra*, is simply not supported by the record (*see* Tr. 16).

Moreover, the ALJ stated, "[i]n searching for evidence that would support [Plaintiff's] allegations regarding her limitations related to her musculoskeletal complaints, the [ALJ] notes that the **objective evidence** fails to provide a compelling basis for the claimant's statements regarding her [limitations]" (Tr. 15) (*emphasis added*).  As the Eleventh Circuit stated in *Somogy v. Comm'r of Soc. Sec.*,"the nature of fibromyalgia itself renders over-emphasis upon objective findings inappropriate."  366 Fed. Appx. 56, 65 (11th Cir. 2010) (*internal citations omitted*); *see also Green-Younger*, 335 F.3d at 108-09 (lack of physical abnormalities did not undercut claimant's complaints of pain since physical examinations of fibromyalgia patients "will usually yield normal results").

Since "a treating physician's testimony can be particularly valuable with respect to fibromyalgia, where objective evidence is often absent," *see Moore*, 405 F.3d at 1212, the undersigned finds the ALJ's over-emphasis upon objective findings constitutes reversible error in this instance.  Accordingly, the undersigned finds the ALJ did not apply the proper legal standards in denying Plaintiff's disability claim.   Therefore, the decision of the Commissioner shall be reversed and remanded for additional proceedings consistent with this Order and Opinion.

## V. Conclusion

For the foregoing reasons, the undersigned finds the decision of the Commissioner is neither supported by substantial evidence, nor decided according to proper legal standards.   The Commissioner's decision is hereby **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

On remand, the Commissioner may hold other proceedings as he deems necessary, but in any event shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law, reweigh the opinion evidence, and give the appropriate weight to the opinion of Plaintiff's treating physician, Dr. Washburn.

Plaintiff is cautioned, however, that this opinion does not suggest Plaintiff is entitled to disability benefits.  Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips*, 357 F.3d at 1244.

## VI. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Opinion and, thereafter, to close the file.  The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filled within fourteen (14) days of the Commissioner's final decision to award benefits.  *See* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a); *Bergen v. Comm'r of Soc. Security*, 454 F.3d 1273, 1278 (11th Cir. 2006).

**DONE AND ORDERED** at Jacksonville, Florida this 28th day of September, 2010.

Copies to all counsel of record

**THOMAS E. MORRIS**
United States Magistrate Judge